FRITZSCHE DODGE & OLCOTT, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fritzsche Dodge & Olcott, Inc. v. Commissioner
Docket No. 1494-79.
United States Tax Court
T.C. Memo 1983-56; 1983 Tax Ct. Memo LEXIS 734; 45 T.C.M. (CCH) 607; T.C.M. (RIA) 83056; January 31, 1983. Paul D. Seghers and Joseph M. Persinger, for the petitioner. David M. Brandes and Michael Kevin Phalin, for the respondent. HAMBLEN
MEMORANDUM OPINION HAMBLEN, Judge: Respondent determined deficiencies of $163,252.64 and $63,157.44, respectively, in petitioner's 1974 and 1975 Federal income tax. The sole issue for decision is whether petitioner's wholly-owned subsidiary, Fritzsche Dodge & Olcott *736 International, Inc., qualified as a Domestic International Sales Corporation (hereinafter DISC) under section 992(a)[1] for the fiscal years ended January 31, 1975, and January 31, 1976. All of the facts have been stipulated and are found accordingly. Petitioner, Fritzsche Dodge & Olcott, Inc., was a New York corporation with its principal place of business in New York, New York, when it filed its petition in this case. Petitioner filed its 1974 and 1975 Federal corporate income tax returns with the Director, Brookhaven Service Center, Holtsville, New York. For the years in issue, petitioner was engaged in the manufacture and worldwide sale of essential oils, fragrances, and flavors. On May 16, 1972, petitioner incorporated Fritzsche Dodge & Olcott International, Inc. (hereinafter International), under the laws of the state of New York to serve as a commission agent DISC with respect to petitioner's export sales. For its fiscal years ended January 31, 1975, and January 31, 1976, International filed separate Federal income tax *737 returns as a DISC. International employed the accrual method of accounting. During the years in issue, petitioner owned all of International's capital stock and operated International as a DISC entitled to receive as commission income four percent of petitioner's qualified export sales. On its 1974 and 1975 returns petitioner reported taxable dividends of $132,581 and $185,515, respectively, as deemed distributions from International under section 995(b). Petitioner also claimed a deduction on its 1974 and 1975 returns for commissions owed to International in the amounts of $397,673 and $313,046, respectively. Petitioner paid such commissions to International on April 14, 1975, and April 5, 1976, respectively. Such commissions equalled four percent of the qualified export sales that International reported on the returns it filed for the years ended January 31, 1975, and January 31, 1976, respectively. International reported the commissions as income on such returns. In the notice of deficiency, respondent determined that International did not qualify as a DISC under section 992 for its taxable years ended January 31, 1975, and January 31, 1976, and, therefore, included *738 in petitioner's taxable income for 1974 and 1975 a portion of the taxable income that International reported on its tax returns. [2] Respondent determined that International did not qualify as a DISC for the years ended January 31, 1975, and January 31, 1976, because the basis of its qualified export assets at the close of each such taxable year did not equal or exceed 95 percent of the sum of the adjusted basis of all its assets at the close of such years. [3] In making this determination, respondent excluded from the computation of qualified export assets the commissions receivable owed to International by petitioner at the close of International's taxable years because such receivables were not paid to International within 60 days following the close of each such taxable year as required by section 1.993-2(d)(2), Income Tax Regs.
*739 We must decide whether International's commissions receivable constituted qualified export assets. Section 992(a)(1)[4] sets forth the requirements a corporation must satisfy in order to qualify as a DISC for the taxable year. Under section 992(a)(1)(B), the adjusted basis of the corporation's qualified export assets at the close of the taxable year must equal or exceed 95 percent of the sum of the adjusted basis of all of the corporation's assets at the close of such year. The term "qualified export assets" is defined in section 993(b). Although that section does not expressly include "commissions receivable" within its definition of qualified export assets, the regulations provide that commissions receivable may by treated as qualified export assets when certain conditions are satisfied. Section 1.993-2(d)(2), Income Tax Regs., provides, in part: *740 (2) Trade receivables representing commissions. If a DISC acts as commission agent for a principal in a transaction * * * which results in qualified export receipts for the DISC, and if an account receivable or evidence of indebtedness held by the DISC and representing the commission payable to the DISC as a result of the transaction arises * * * such account receivable or evidence of indebtedness shall be treated as a trade receivable. If, however, the principal is a related supplier (as defined in section 1.994-1(a)(3)) with respect to the DISC, such account receivable or evidence of indebtedness will not be treated as a trade receivable unless it is payable and paid in a time and manner which satisfy the requirements of section 1.994-1(e)(3) * * *. Section 1.994-1(e)(3)(i), Income Tax Regs., provides: The amount of * * * a sales commission (or reasonable estimate thereof) actually charged by a DISC to a related supplier * * * must be paid no later than 60 days following the close of the taxable year of the DISC during which the transaction occurred. Since petitioner was a related supplier with respect to International, [5] International's commissions *741 receivable from petitioner had to be paid within 60 days following the close of International's taxable year in order for such commissions receivable to constitute trade receivables and, accordingly, qualified export assets under section 1.993-2(d)(2), Income Tax Regs. It is clear, however, that for the years in issue petitioner did not pay the commissions it owed to International within the prescribed time period and, therefore, International's commissions receivable do not constitute qualified export assets. To avoid this result, petitioner argues that the regulations containing the 60-day payment rule are invalid. Nevertheless, in CWT Farms, Inc. v. Commissioner,79 T.C. 1054 (1982), this Court recently upheld the validity of sections 1.993-2(d)(2) and 1.664-1(e)(3)(i), Income Tax Regs., and the 60-day payment rule. All of the arguments advanced by petitioner in the instant case were adequately dealt with in CWT Farms and need not be further discussed herein. *742 Finally, petitioner contends that, even if the 60-day payment rule is a valid regulation, its payment of the commissions to International within 73 and 64 days following the close of International's taxable years constitutes substantial compliance with such rule. Relying on Tipps v. Commissioner,74 T.C. 458 (1980), petitioner insists that its substantial compliance therewith requires us to determine that International's commissions receivable constituted qualified export assets. We must reject petitioner's argument. Substantial compliance with a regulation may be sufficient if its requirements are procedural or directory, the purpose of which is directed merely towards the orderly and prompt conduct of business. Tipps v. Commissioner,supra at 468; Valdes v. Commissioner,60 T.C. 910, 913 (1973). On the other hand, regulatory requirements that are directed towards the substance or essence of the statute must be complied with to their full extent. Tipps v. Commissioner,supra at 468; Penn-Dixie Steel Corporation v. Commissioner,69 T.C. 837, 846 (1978). *743 Notwithstanding petitioner's protestations to the contrary, it is clear that the 60-day payment rule is a substantive requirement and is not merely procedural or directory. Under the regulations, a related supplier's compliance with the rule determines whether commissions receivable will be treated as qualified export assets. Thus, this regulatory requirement actually determines whether a corporation's commissions receivable constitute qualified export assets. Furthermore, if the commissions receivable are not treated as qualified export assets for the taxable year, this will impair the corporation's ability to satisfy the requirements of section 992(a)(1)(B) relating to the amount of qualified export assets a DISC must have at the close of a taxable year, thereby jeopardizing the corporation's qualification as a DISC. Consequently, the 60-day payment rule is grounded in the substance of the statute itself and complete compliance therewith, albeit a strict rule, is mandatory. Accordingly, we must sustain respondent's determination. To reflect the foregoing, Decision will be entered *744 for the respondent.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. Respondent included in petitioner's taxable income for the year ended December 31, 1974, eleven-twelfths of International's taxable income for the year ended January 31, 1975. Similarly, respondent included in petitioner's taxable income for the year ended December 31, 1975, one-twelfth of International's taxable income for the year ended January 31, 1975, and eleven-twelfths of International's taxable income for the year ended January 31, 1976. In so doing, respondent relied on secs. 61 and 482. Since petitioner has stipulated that the only issue for decision in the instant case is International's status as a DISC, we conclude that petitioner has conceded that the taxable income reported on International's returns is includable in its income for the years in issue if International does not qualify as a DISC. ↩
3. See sec. 992(a)(1)(B)↩.
4. Sec. 992(a)(1) provides: (1) DISC.--For purposes of this title, the term "DISC" means, with respect to any taxable year, a corporation which is incorporated under the laws of any State and satisfies the following conditions for the taxable year: (A) 95 percent or more of the gross receipts (as defined in section 993(f)) of such corporation consist of qualified export receipts (as defined in section 993(a)), (B) the adjusted basis of the qualified export assets (as defined in section 993(b)) of the corporation at the close of the taxable year equals or exceeds 95 percent of the sum of the adjusted basis of all assets of the corporation at the close of the taxable year, (C) such corporation does not have more than one class of stock and the par or stated value of its outstanding stock is at least $2,500 on each day of the taxable year, and (D) the corporation has made an election pursuant to subsection (b) to be treated as a DISC and such election is in effect for the taxable year.↩
5. Under secs. 1.994-1(a)(3) and 1.482-1(a), Income Tax Regs.↩, petitioner was a related supplier because it owned 100 percent of International's stock during the years in issue.