GEHL COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gehl Co. v. Commissioner
Docket No. 24953-82.
United States Tax Court
T.C. Memo 1984-667; 1984 Tax Ct. Memo LEXIS 2; 49 T.C.M. (CCH) 372; T.C.M. (RIA) 84667; December 27, 1984. Joan M. Fagan and David S. Lott, for the petitioner. Sheldon M. Kay, for the respondent. DAWSON MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: Year
Deficiency
1975
$145,053.88
1976
67,323.07
1977
54,244.99
1978
75,674.34 After concessions by petitioner, the only issue remaining for decision is whether Gehl International, Inc. (hereinafter referred to as International) qualifies as a Domestic International Sales Corporation (hereinafter referred to as DISC) under section 992 [1] for its taxable years ended January 31 of 1976, 1977, 1978 and 1979. Resolution of this issue is dependent upon the application of sections 1.993-2(d)(2) and 1.994-1(e)(3), Income Tax Regs., which provide that receivables representing commissions from qualified export sales on behalf of related suppliers are qualified export assets only if the commissions (or a reasonable *4 estimate thereof) are paid within 60 days after the close of the DISC's taxable year. This case was submitted fully stipulated pursuant to Rule 122. [2] The stipulation of facts and joint exhibits are incorporated herein by this reference. Petitioner is a corporation organized under the laws of the state of Wisconsin. At the time it filed its petition in this case, petitioner's principal place of business was in West Bend, Wisconsin. International was incorporated under the laws of the state of Wisconsin on March 23, 1972. At such time and during the years in issue, it had only one class of stock, which was wholly owned by petitioner. In 1972 International timely and properly filed a valid election with the Internal Revenue Service to be treated as a DISC. That election, which was consented to by petitioner, has not been revoked. International's sole function was to act as a commission agent for items it exported on petitioner's *5 behalf. During the years in issue, petitioner was engaged in the manufacture of agricultural machinery and equipment and in the domestic sale and foreign export of such products. Petitioner and International reported their income and deductions in accordance with the accrual method of accounting. Petitioner's taxable year is a calendar year, while International uses a taxable year ended January 31. Petitioner is a related supplier with respect to International. Pursuant to a letter dated March 30, 1972, from J. J. Zadra, president of petitioner, to J. J. Ecker, president of International, commissions were to be paid each month from petitioner to International on all qualified export sales made during the month at the rate of four and one-half percent. At the end of International's fiscal year, the commissions were to be adjusted upward or downward to comply with section 994. On behalf of International, J. J. Ecker accepted the terms of this letter orally. Thereafter, petitioner and International intended that the terms of the letter govern the payment of commissions from petitioner to International, except with respect to the timing of the payments. The adjusted *6 basis of International's total assets on each of the dates listed below was as follows: Year ended
Amount
January 31, 1976
$814,378
January 31, 1977
922,287
January 31, 1978
937,806
January 31, 1979
1,031,016
The accrued commissions payable by petitioner to International as of the dates listed below were as follows: Date
Amount
January 31, 1976
$674,855
January 31, 1977
569,120
January 31, 1978
493,208
January 31, 1979
463,345
Payments of commissions from petitioner to International in petitioner's 1976, 1977, 1978 and 1979 taxable years were made as follows: Taxable
Total
Year
Date of Payment
Amount
for Year
1976
February 12, 1976
$3,000
April 5, 1976
12,000
April 26, 1976
204,000
May 25, 1976
5,000
June 2, 1976
1,000
July 12, 1976
8,000
October 8, 1976
441,855
$674,855
1977
January 10, 1977
$8,000
April 4, 1977
3,600
April 22, 1977
189,000
June 7, 1977
7,000
July 7, 1977
7,989
October 11, 1977
362,270
a $577,859
1978
February 17, 1978
$1,000
April 13, 1978
6,000
April 24, 1978
234,000
May 12, 1978
6,000
June 19, 1978
2,090
July 12, 1978
6,000
October 11, 1978
240,208
b $495,298
1979
February 5, 1979
$6,940
April 4, 1979
5,000
April 24, 1979
242,000
July 9, 1979
6,500
July 19, 1979
5,100
October 11, 1979
197,805
$463,345
*7 As shown in the above table, the commissions receivable of International at the close of its taxable years ended January 31, 1976, 1977, 1978 and 1979 were not fully paid by petitioner within 60 days of such dates (by March 30, 1976, 1977, 1978 and 1979, respectively). In fact, by 60 days after the close of International's taxable years ended January 31, 1976, 1977, 1978 and 1979, petitioner paid only .44 percent, 1.41 percent, .20 percent, and 1.50 percent, respectively, of the total commissions payable. The percentages of total commissions payable that were satisfied within 90 days of the close of each of International's taxable years were 32.45 percent, 35.25 percent, 48.86 percent and 54.81 percent, respectively. The commissions were paid in full, however, by the respective due dates of International's returns for such years (October 15, 1976, 1977, 1978 and 1979). [3]
*8 With respect to commissions payable to International on January 31, 1973, 1974 and 1975, petitioner followed a similar payment pattern, paying less than 50 percent of the commissions payable within the first 60 days after such dates and 100 percent by the due dates of International's returns for such years. Petitioner's returns for its 1972, 1973 and 1974 taxable years were examined by respondent and no adjustments were proposed for DISC-related items. Petitioner's method and timing of payment of commissions were based on its beliefs regarding the legal requirements with respect to such payments. J. J. Zadra, petitioner's president during the years in issue, and Gerald J. Bartelt, petitioner's treasurer during such years, would testify, if called to do so, that petitioner did not delay paying the commissions payable in order to obtain any tax or financial benefit. For the taxable years 1975, 1976, 1977 and 1978, petitioner included in its taxable income as deemed distributions from International the amounts of $161,414.44, $203,693,68, $275,192,35 and $233,614.28, respectively. The sole basis for the adjustments in dispute in the notice of deficiency is respondent's *9 determination that International did not qualify as a DISC under section 992 for its taxable years ended January 31, 1976, 1977, 1978 and 1979. This determination is based solely upon respondent's position that International did not satisfy the 95 percent qualified export assets test prescribed by section 992(a)(1)(B), because the commissions receivable from petitioner on International's books on January 31, 1976, 1977, 1978 and 1979 did not constitute "qualified export assets" within the meaning of section 993(b), due to the application of sections 1.993-2(d)(2) and 1.994-1(e)(3), Income Tax Regs. If the commissions receivable are found not to be qualified export assets, International will not have qualified as a DISC for its taxable years ended January 31, 1976, 1977, 1978 and 1979. Section 992(a)(1) sets forth the conditions a corporation must satisfy in order to qualify as a DISC. One of these requirements, under section 992(a)(1)(B), is that the adjusted basis of the qualified export assets of the corporation at the close of the taxable year equals or exceeds 95 percent of the sum of the adjusted basis of all assets of the corporation at the close of such year. *10 Under section 993(b)(3) qualified export assets include accounts receivable that arise by reason of certain transactions of the corporation. Section 993(b), which defines the term "qualified export assets," does not specifically mention commissions receivable as constituting qualified export assets. The regulations, however, specifically provide that commissions receivable are treated as qualified export assets under certain conditions (referred to as trade receivables in the regulations). Section 1.993-2(d)(2), Income Tax Regs., provides, in part, as follows: (2) Trade receivables representing commissions. If a DISC acts as commission agent for a principal in a transaction * * * which results in qualified export receipts for the DISC, and if an account receivable or evidence of indebtedness held by the DISC and representing the commission payable to the DISC as a result of the transaction arises * * * such account receivable or evidence of indebtedness shall be treated as a trade receivable. If, however, the principal is a related supplier * * * with respect to the DISC, such account receivable or evidence of indebtedness will not be treated as a trade receivable *11 unless it is payable and paid in a time and manner which satisfy the requirements of § 1.994-1(e)(3) * * * (relating to initial payment of transfer price or commission * * *) * * * Section 1.994-1(e)(3), Income Tax Regs., provides, in part, as follows: (3) Initial payment of transfer price or commission. (i) The amount of * * * a sales commission (or reasonable estimated thereof) actually charged by a DISC to a related supplier * * * must be paid no later than 60 days following the close of the taxable year of the DISC during which the transaction occurred. * * * (iv)(a) Except with respect to incomplete transactions * * * if the amount actually paid results in the DISC realizing at least 50 percent of the DISC's taxable income from the transaction as reported in its tax return for the taxable year the transaction is completed, then the amount actually paid shall be deemed to be a reasonable estimate of such transfer price or commission. The parties have stipulated that petitioner is a related supplier with respect to International. Moreover, by 60 days after the close of International's taxable years ended January 31, 1976, 1977, 1978 and 1979, petitioner paid *12 only .44 percent, 1.41 percent, .20 percent and 1.50 percent, respectively, of the total commissions due International. Therefore, by application of sections 1.993-2(d)(2) and 1.994-1(e)(3), Income Tax Regs., the commissions receivable are not treated as qualified export assets. Petitioner contends that sections 1.993-2(d)(2) and 1.994-1(e)(3)(i), Income Tax Regs., are invalid insofar as they impose a 60-day payment rule as a condition of treating commissions payable by a related supplier as qualified export assets. In this regard, petitioner urges us to find that the statute is not ambiguous and that the regulation is arbitrary and capricious and is not consistent with congressional intent and purpose. All of these arguments were rejected by this Court in CWT Farms, Inc. v. Commissioner,79 T.C. 1054 (1982) (Supplemental Opinion), on appeal (11th Cir. January 4, 1984), in which we upheld the validity of sections 1.993-2(d)(2) and 1.994-1(e)(3)(i), Income Tax Regs., and the 60-day payment rule. [4]
*13 In the alternative, petitioner contends that the 60-day payment rule imposed by sections 1.993-2(d)(2) and 1.994-1(e)(3), Income Tax Regs., is a safe-harbor provision that merely requires that accounts receivable between a DISC and the related supplier (or a reasonable estimate thereof) be paid within the 60-day period if the parties to the transactions are to avail themselves of the inter-company pricing rules of section 994 with respect to transactions giving rise to such accounts receivable. Petitioner contends that the non-payment of the commissions payable within the 60-day period should simply result in the commissions or transfer prices charged on the transactions giving rise to the receivables being subject to recomputation under section 482. The allowable commissions receivable would, however, be qualified export assets, under petitioner's theory. Petitioner's arguments simply are not supported by a reasonable reading of the regulations. Section 1.993-2(d)(2), Income Tax Regs., clearly states that if the 60-day payment rule in section 1.994-1(e)(3), Income Tax Regs., is not met, the commissions receivable will not qualify as trade receivables, i.e., accounts *14 receivable and evidences of indebtedness that are qualified export assets under section 993(b)(3). Moreover, petitioner's alternative argument is related to the doctrine of substantial compliance, as petitioner notes in its brief. Petitioner emphasizes throughout its brief that due to its good faith and history of payments to International, the commissions receivable should qualify as qualified export assets. In Fritzsche Dodge & Olcott, Inc. v. Commissioner,T.C. Memo. 1983-56, we noted that the 60-day payment rule is not merely procedural or directory, but is a substantive requirement to which the doctrine of substantial compliance is not applicable. Complete compliance with the regulation, therefore, is mandatory. Consequently, we hold for respondent. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in issue.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
a. Petitioner paid International $8,739 more in commissions than were accrued as of January 31, 1977. ↩
b. Petitioner paid International $2,090 more in commissions than were accrued as of January 31, 1978.↩
3. Section 6072(b) provides, in part, that DISC returns shall be filed on or before the fifteenth day of the ninth month following the close of the DISC's taxable year.↩
4. See also LeCroy Research Systems Corporation v. Commissioner,T.C. Memo. 1984-145, on appeal (2d Cir. April 20, 1984); Fritzsche Dodge & Olcott, Inc. v. Commissioner,T.C. Memo. 1983-56. Contra Thomas International Ltd. v. United States,     Cl. Ct.     (1984), 84-2 USTC par. 9857, 54 AFTR2d 84↩-6071.