FRIEDMAN, Circuit Judge.
 

 This is an appeal by the United States from a judgment of the United States Claims Court granting summary judgment to the appellee taxpayer in its tax refund suit. The court held invalid, as unauthorized by the governing statute, a Treasury Regulation pursuant to which the Commissioner of Internal Revenue had denied the appellee the special tax treatment available to a domestic international sales corporation (DISC) that meets specified statutory criteria. We uphold the regulation, reverse the judgment of the Claims Court, and remand the case with instructions to grant the government’s motion for summary judgment and to dismiss the suit.
 

 I
 

 A. The DISC provisions of the Internal Revenue Code of 1954, 26 U.S.C. §§ 991-995 (1976) were added to the Code in 1971. Revenue Act of 1971, Pub.L. No. 92-178, Title Y, 85 Stat. 535. Their purpose was to provide tax incentives for United States firms to increase their exports and to remove the previous tax disadvantage of firms engaged in export activities through domestic corporations instead of through foreign subsidiaries.
 
 See
 
 H.R.Rep. No. 533, 92d Cong., 1st Sess. 58,
 
 reprinted in
 
 1971 U.S.Code Cong. & Ad.News 1825, 1872; S.Rep. No. 437, 92d Cong., 1st Sess.,
 
 reprinted in
 
 1971 U.S.Code Cong. & Ad. News 1918. The basic scheme allows a domestic production company to establish a DISC to handle its export sales and leases. The DISC may be no more than a shell corporation, which performs no functions other than to receive commissions on foreign sales made by its parent.
 

 The DISC is not subject to federal income tax on its “earnings.” Instead, part of the DISC’s earnings are taxed to its shareholder(s) as constructive dividends and the remainder is taxed only when actually distributed. The exempted earnings must be reinvested in export activities.
 
 See generally
 
 B. Bittker & J. Eustice,
 
 Federal Income Taxation of Corporations and Shareholders
 
 ¶ 17.14 (4th ed. 1979).
 

 To insure that these tax-deferred profits actually are used for export activities and are not diverted to either production for the domestic market or for manufacturing overseas, Congress provided strict requirements for qualification as a DISC. A corporation that elects DISC treatment must satisfy the income and assets tests set forth in section 992(a)(1).
 

 At least 95 percent of a DISC’s gross receipts must consist of “qualified export receipts,” which section 993(a)(1) defines as receipts derived from the sale or lease of export property for use outside the United States and from related services. Similarly, at least 95 percent of a DISC’s assets must consist of “qualified export assets” which section 993(b) defines as including “accounts receivable and evidences of indebtedness which arise by reason of [specified] transactions of such corporations” that relate to export activities and generate qualified export receipts. The failure to meet either the income or the assets test results in the corporation’s loss of DISC status and the recapture of the previously deferred income. § 995(b)(2).
 

 A key element of the DISC scheme is the “producer’s loan” provisions of section 993(d). By means of such loans a DISC may make its tax-deferred earnings available to the parent corporation for reinvestment in export activity without jeopardizing its DISC status, since producer’s loans qualify as export assets. Section 993(d)
 
 *302
 
 provides detailed and complex requirements for producer’s loans to insure that the DISC’S tax-deferred earnings are used only in the parent corporation’s export activities.
 
 See CWT Farms, Inc. v. Comm’r,
 
 755 F.2d 790 (11th Cir.1985).
 

 The implementing Treasury Regulations provide that the commissions a DISC receives from a related supplier may be treated as qualified export assets, but only if paid within 60 days of the close of the DISC’S taxable year. Section 1.993-2(d)(2) provides in pertinent part:
 

 If a DISC acts as commission agent for a principal in a transaction ... which results in qualified export receipts for the DISC, and if an account receivable or evidence of indebtedness held by the DISC and representing the commission payable to the DISC as a result of the transaction arises ..., such account receivable or evidence of indebtedness shall be treated as a ... [qualified export asset]. If, however, the principal is a related supplier (as defined in § 1.994-l(a)(3)) with respect to the DISC, such account receivable or evidence of indebtedness will not be treated as a ... [qualified export asset] unless it is payable and paid in a time and manner which satisfy the requirements of § 1.994-l(e)(3)____
 

 Section 1.994-l(e)(3) in turn provides:
 

 The amount of ... a sales commission (or reasonable estimate thereof) actually charged by a DISC to a related supplier ... must be paid no later than 60 days following the close of the taxable, year of the DISC during which the transaction occurred.
 

 The validity of this 60-day payment requirement in the Regulations is the issue in this case.
 

 B. The relevant facts of this case, set forth in greater detail in the Claims Court’s opinion, 6 Cl.Ct. 414 (1984), are not in dispute. The appellee Thomas International Limited (Thomas), a wholly owned subsidiary of Thomas Built Buses, Inc. (Thomas Buses), was organized as a commission DISC. Thomas accrued commissions on all of Thomas Buses’ export sales. For the taxable years ending March 31, 1977 and 1978, Thomas’ respective commissions were $708,231 and $329,057, which it entered as accounts receivable on its books. Thomas Buses did not issue checks to Thomas for the commissions until December 15, 1977 and June 1, 1978, respectively. This was 8V2 months after the close of Thomas’ 1977 taxable year and 62 days after the close of its 1978 taxable year. Since Thomas claimed qualification as a DISC, it paid no taxes for either year.
 

 The Internal Revenue Service assessed deficiencies on Thomas. It ruled that Thomas did not qualify as a DISC for those taxable years because Thomas had not met the qualified export assets test of section 992(a)(1)(B). The Service concluded that the accrued commissions were not qualified export assets because they were not paid to Thomas within 60 days after the close of each taxable year, as Treasury Regulation § 1.993-2(d)(2) required.
 

 Thomas paid the deficiency, and when its refund claim was disallowed, filed the present suit in the Claims Court. On cross-motions for summary judgment the Claims Court granted Thomas’ and denied the government’s motion. The court held that the 60-day payment requirement for commissions receivable in regulation 1.993-2(d)(2) was unauthorized by, and in fact contrary to, the DISC statute. Since the United States conceded it had no other defense on the merits, the court concluded that Thomas was entitled to judgment as a matter of law.
 

 The court ruled that in light of the entire DISC statute, the term “accounts receivable ... which arise by reason of [export] transactions of such corporation” unambiguously includes commissions receivable. It reasoned that Congress intended to allow a DISC to operate as a commission agent as well as a reseller of goods and that most commission DISCs could not meet the 95 percent export assets test if its commissions receivable were excluded. The court stated that “even if there were an ambiguity with respect to whether or not the accounts receivable which arise by sales in
 
 *303
 
 which the DISC is merely the agent, it has been resolved by provisions of Treasury Regulation § 1.993-2(d)(2) other than the 60-day payment requirement.” 6 Cl.Ct. at 419. The court concluded that the 60-day payment rule could not “be deemed to be merely an interpretation of any statutory phrase but is an additional requirement superimposed thereon for another purpose.”
 
 Id.
 

 The court then held that the regulation was not sustainable as a reasonable means of preventing the circumvention of the “producer’s loan” provisions. It stated that the Treasury may not add requirements which Congress failed to adopt “to close a loophole” unless Congress delegated specific legislative or rule-making authority to the Treasury. The court found that the 60-day payment requirement
 

 attempts to resolve a question of substance versus form by making conclusive against the taxpayer what would otherwise be only a single factor in that factual inquiry. It denies the taxpayer the opportunity to prove that the funds which could have been used to pay the commissions were in fact used by the related supplier as export assets for purposes consistent with those permissible for producer’s loans. And it also makes irrelevant any proof that the failure of the agent to receive payment of the commissions within the 60 days may have been for bona fide reasons, such as hardship, inadvertence, failure of the customer to make prompt payment, uncertainty as to amount or difficulty in computation, rather than as a device to circumvent the producer’s loan restrictions.”
 

 Id.
 
 at 420.
 

 II
 

 The regulations for section 993 were promulgated pursuant to the Treasury’s general authority under section 7805(a) to “prescribe all needful rules and regulations for the enforcement of this title.”
 
 See
 
 37 Fed.Reg. 20853 (1972). They are thus entitled to less deference than regulations issued pursuant to specific legislative authority.
 
 See Rowan Cos. v. United States,
 
 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981). Nevertheless, our role in reviewing the regulations is limited. We “must defer to Treasury Regulations that ‘implement the Congressional mandate in some reasonable manner.’ ”
 
 Commissioner v. Portland Cement Co.,
 
 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981),
 
 quoting United States v. Correll,
 
 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). “Treasury Regulations ‘must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.’ ”
 
 Portland Cement, supra, quoting Commissioner v. South Texas Lumber Co.,
 
 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). An interpretive regulation, such as is here involved, is valid if it “harmonizes with the statute’s ‘origin and purpose’ ” and language.
 
 United States v. Vogel Fertilizer Co.,
 
 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982).
 

 The Tax Court and the Second and Eleventh Circuits have upheld the 60-day payment provision of the regulation.
 
 CWT Farms, Inc. v. Comm’r,
 
 755 F.2d 790 (11th Cir.1985),
 
 aff'g
 
 79 T.C. 1054 (1982);
 
 LeCroy Research Systems Corp. v. Comm’r,
 
 751 F.2d 123 (2d Cir.),
 
 rev’g on other grounds
 
 47 T.C.M. (CCH) 1345 (1984). Like those courts, we conclude that the provision validly implements the statutory purpose, and constitutes a permissible exercise of the Commissioner’s broad authority to prescribe “needful rules and regulations for the enforcement of” the DISC provisions.
 

 A. The Treasury’s authority to promulgate interpretive regulations is more circumscribed when the regulation purports to clarify a statutory term that Congress has defined with considerable specificity or that is otherwise unambiguous.
 
 United States v. Vogel Fertilizer Co.,
 
 455 U.S. at 24, 102 S.Ct. at 827. Contrary to the view of the Claims Court, however, we cannot conclude that the statutory term “accounts receivable ... which arise by reason of [specified] transactions of such corporation” in section 993(b) un
 
 *304
 
 ambiguously includes commissions receivable.
 

 The term “accounts receivable” ordinarily connotes amounts due in return for goods or services supplied. A commission paid in return for selling activities, either a fixed amount or a percentage of the sales price, normally would not be described as an account receivable. That is particularly so with respect to the commissions involved in this case, which were paid not for any services the DISC provided, but as a method Congress sanctioned to enable domestic companies to shield from immediate taxation a portion of their income derived from export activities.
 

 The specified transactions of a DISC that create qualified export assets all involve the sale or exchange of export property and other qualified export assets and services that relate to any such disposition “of such corporation.” § 993(a)(1). A commission DISC such as Thomas does not engage in any sales of export property or related services but is a mere shell. The commissions due Thomas from Thomas Buses do not arise from the export transactions “of such corporation,” i.e., of Thomas, since the latter itself engaged in no export transactions. The present situation stands in sharp contrast to a DISC that actually made the export sales and obtained its profit either by receiving a commission or other fee on such sales, or from the difference between the cost and selling price of the goods themselves.
 

 Although Congress intended that DISCs could also function as commission agents, it does not follow that in using the term “accounts receivable” Congress necessarily intended to include “commissions receivable.”
 

 In sum, the words “accounts receivable” do not unambiguously include commissions receivable. The Commissioner, therefore, had leeway to define and apply the statutory term so as properly and effectively to implement the congressional plan and purpose in the DISC provisions.
 

 B. We agree with the Eleventh Circuit’s conclusion in
 
 CWT Farms
 
 that the 60-day commission payment provision in the Regulations is valid because it is “harmonious with the origin and purpose of the DISC legislation.” 755 F.2d at 802.
 

 In permitting commissions to be treated as “accounts receivable” in determining qualified export assets, the Commissioner properly recognized the danger that unless strictly controlled, commissions could be a means of evading the strict requirements and limitations Congress placed upon producer loans. These restrictions were designed to insure that a producer would not divert the tax-immunized DISC funds into non-export activities.
 
 CWT Farms,
 
 655 F.2d at 796. Unless promptly paid, commissions due a DISC from its parent in effect create an open line of credit, upon which the parent can draw at will for whatever purposes it wishes.
 

 Congress, however, provided a mechanism whereby a DISC’S tax-deferred earnings could be reinvested only in export activities. This objective was accomplished in part through the producer’s loan provisions of section 993(d).
 

 In general, the cumulative amount a DISC may lend to a producer may not exceed the amount of (a) the latter’s export related assets and (b) the accumulated DISC income. § 993(d)(1)(A) & (d)(2). These restrictions on the amount of loans, as well as the other statutory requirements, could be easily circumvented if there were no time limit on the payment of commissions owed by a related supplier. The requirement that a related producer pay commissions to a DISC within 60 days of the end of the DISC’S taxable year supports, protects, and prevents evasions of the producer’s loan provisions.
 

 Unlike the Claims Court, we do not view the 60-day payment regulation as an improper attempt by the Commissioner to create an additional requirement that Congress did not impose. To the contrary, we think the regulation constituted a reasonable requirement the Commissioner validly imposed as a condition of permitting DISCs to include commissions due from related
 
 *305
 
 producers in, their qualified export assets as accounts receivable. As the Eleventh Circuit described the provision in
 
 CWT Farms,
 
 it does “no more than set a due date for the payment of commissions receivable.” 755 F.2d at 802.
 

 Thomas does not contend that the 60-day time limit is arbitrary because it does not give the related producer sufficient time within which to calculate and pay the commissions due to the DISC. Indeed, Thomas could not properly make that argument, since the regulations require that only a reasonable estimate of the actual commissions due need be paid within 60 days, and state that a 50 percent payment shall be deemed a reasonable estimate of such commissions. § 1.994-l(e)(3)(iv).
 

 In invalidating the regulation, the Claims Court stated that the DISC should be allowed to prove that the funds which would have been used to pay the commissions were in fact used by the related supplier for purposes consistent with the producer’s loan provisions. The court further criticized the 60-day payment rule on the ground that there may have been “bona fide reasons” for a related producer’s failure to make timely payment, which the rule precluded the DISC from establishing.
 

 The 60-day payment requirement is a prophylactic measure. For such a measure to be effective, some time limit upon payments of commissions to DISCs is necessary—as the Claims Court itself recognized. The “particular facts and circumstances” standard that the Claims Court apparently deemed appropriate for dealing with the problem would be impossible to administer, would substitute doubt and uncertainty for the definiteness the regulation provides, and would seriously weaken the effectiveness of the regulation in guarding against evasion of the purchaser’s loan requirements. Since we hold the regulation to be valid, it is immaterial that the particular situation in which it is applied may not involve the evils the regulation was intended to prevent.
 
 Cf. North American Co. v. Securities and Exchange Commission,
 
 327 U.S. 686, 710-11, 66 S.Ct. 785, 798-99, 90 L.Ed. 945 (1946).
 

 Ill
 

 Thomas attempts to uphold the judgment of the Claims Court on the alternative ground that even if the regulation is valid, Thomas has substantially complied with it. Thomas argues that the regulation is procedural and not substantive, that the commissions were timely paid through certain accounting entries made by itself and Thomas Buses, and that Thomas Buses had sufficient export accounts receivable to allow reinvestment of Thomas’ accumulated DISC income that reflected the commissions.
 

 We reject this argument. The regulation is not merely procedural but is a substantive rule that determines whether commissions receivable constitute qualified export assets.
 
 See Gehl Co. v. Comm’r,
 
 49 T.C.M. (CCH) 372, 375-76 (1984);
 
 Fritzsche, Dodge & Olcott, Inc. v. Comm’r,
 
 45 T.C.M. (CCH) 607, 609-10 (1983). Substantive regulatory requirements must be complied with fully.
 
 Fritzsche, Dodge & Olcott
 
 at 609;
 
 Tipps v. Comm’r,
 
 74 T.C. 458 (1980).
 

 The requirement in the regulation is unequivocal: for commissions receivable to constitute qualified export assets, they must be paid within 60 days after the end of the DISC’S taxable year. Assuming
 
 arguendo
 
 that substantial rather than literal compliance satisfies this requirement, the fact that (a) Thomas and Thomas Buses might have made payment through offsetting accounting entries, as the regulation permitted, § 1.994-l(e)(3)(ii), but which they did not do within the 60-day period, or (b) that the failure to make timely payment may not have resulted in evasion of the producer's loan standards, does not establish substantial compliance with the regulation.
 

 CONCLUSION
 

 The judgment of the United States Claims Court is reversed and the case is
 
 *306
 
 remanded with instructions to grant the United States’ motion for summary judgment and dismiss the suit.
 

 REVERSED and REMANDED.