824 F.2d 976
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
A.B. LONG, Jr., et al., Appellants,
v.
The UNITED STATES, Appellee.
 Appeal No. 86-1316.
 United States Court of Appeals, Federal Circuit.
 April 9, 1987.
 
 Before RICH, Circuit Judge, BALDWIN, Senior Circuit Judge,* and NIES, Circuit Judge.
 BALDWIN, Senior Circuit Judge.
 
 DECISION
 
 1
 A.B. Long, Jr., and eleven other individuals (appellants), appeal from a judgment of the United States Claims Court granting the U.S. government's motion for summary judgment and dismissing their claim that the Internal Revenue Service (IRS) wrongly disallowed certain advance royalty deductions claimed on their 1977 and 1978 tax returns. 10 Cl.Ct. 46 (1986). We affirm.
 
 OPINION
 
 2
 In August 1977 appellants formed a limited partnership, Signal Coal Co. (Signal), which in turn entered into a mineral sublease with Coal Properties, Ltd. (sublessor) for strip mining coal from the property of the sublessor. Under the sublease, royalties were payable on the basis of tonnage of coal extracted from the sublessor's property. Certain minimum royalties were due for each year whether or not coal was mined, and sold as follows:
 
 
 3
 Lease Year Commencing Minimum Royalty
Aug. 1, 1977Dec. 31, 1977 $1,417,000
Jan. 1, 1978Dec. 31, 1978 500,000
Jan. 1, 1979Dec. 31, 1979 500,000
Jan. 1, 1980Dec. 31, 1980 500,000
Jan. 1, 1981Dec. 31, 1981 500,000
Jan. 1, 1982Dec. 31, 1982 750,000
Jan. 1, 1983Dec. 31, 1983 750,000
Jan. 1, 1984Dec. 31, 1984 750,000
Jan. 1, 1985Dec. 31, 1985 750,000
Jan. 1, 1986Dec. 31, 1986 750,000
Jan. 1, 1987Dec. 31, 1987 1,000,000
Jan. 1, 1988Dec. 31, 1988 1,000,000
 
 
 4
 If the scheduled minimum royalty payment exceeded the annual mined tonnage royalties, the excess could be credited against tonnage royalties payable in future years.
 
 
 5
 The terms of the sublease agreement required prepayment of the entire minimum owing for the first five years of the sublease ($3,417,000.00). In 1977 Signal satisfied the prepayment obligation with a $1,000,000.00 cash payment and execution of, concurrent with the sublease, two non-recourse notes to the sublessor, secured by the mineral interests, totaling $2,417,000.00. The following is a summary of the 1977-81 installments paid on the initial sublease obligation:
 
 
 6
 Lease Year Date of Payment Amount
 Aug. 1, 1977 $1,000,000.00
 Oct. 17, 1977 19,945.35
 Nov. 14, 1977 20,197.73
 Dec. 27, 1977 41,131.99
 Jan. 25, 1978 19,752.00
 Feb. 13, 1978 19,860.85
 Mar. 15, 1978 11,827.60
 Apr. 20, 1978 56,385.71
 May 18, 1978 61,507.43
 June 20, 1978 249,391.34
 -------------
 -------------
 SUBTOTAL $1,500,000.00
 -------------
 1978 Mar. 28, 1978 $ 500,000.00
 1979 Apr. 2, 1979 500,000.00
 1980 Apr. 1, 1980 500,000.00
 1981 Apr. 1, 1981 500,000.00
 -------------
 SUBTOTAL $2,000,000.00
 -------------
 TOTAL $3,500,000.00
 -------------
 
 
 7
 A deduction for royalties in the amount of $3,448,920.96 was claimed on the partnership's federal income tax return for 1977, and a $500,000.00 deduction was claimed on their 1978 tax return. Appellants alleged that the deductions represented accrued liability for 1977-81 royalty payments.
 
 
 8
 The IRS disallowed $2,000,000.00 of the deduction for 1977 on the basis that it was not attributable to 1977 earnings. For 1978 the entire $500,000.00 was similarly disallowed. Appellants paid their deficiencies, then appealed, asserting that the sublease contained an advanced minimum royalties provision which would have qualified for optional timing of deductibility under Treasury Regulation Sec. 1.612-3(b)(3), as effective in August 1977. The Claims Court affirmed the disallowance.
 
 
 9
 For federal income tax purposes, a royalty payment is deductible by the payor as a trade or business expense under 26 U.S.C. Sec. 162(a)(3) or as an expense for the production of income under 26 U.S.C. Sec. 26. Royalties paid in advance are deductible, generally, from gross income only in the year that the mineral to which they relate is sold. See Brown v. Commissioner, 799 F.2d 27, 29 (2d Cir.1986).
 
 
 10
 On January 20, 1960, the IRS adopted Treasury Regulation Sec. 1.612-3(b)(3), applicable to leases containing advanced royalties provisions with a minimum annual payment requirement.[1] The 1960 regulation provided, in pertinent part:
 
 
 11
 (3) The payor, at his option, may treat the advanced royalties so paid or accrued in connection with mineral property as follows:
 
 
 12
 (i) As deductions from gross income for the year the advanced royalties are paid or accrued, or
 
 
 13
 (ii) As deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid, is sold.
 
 
 14
 T.D. 6446, 1960-1 C.B. 227.
 
 
 15
 Two revenue rulings in the early 1970's, Rev.Rul. 70-20, 1970-1 C.B. 144, and Rev.Rul. 74-214, 1974-1 C.B. 148, interpreted Treasury Regulation Sec. 1.612-3(b)93) to apply to advance installment payments and advance lump sum payments.
 
 
 16
 Later, these two rulings were suspended. See I.R.S. News Release IR-1687 (Oct. 29, 1976). The IRS indicated that installment or lump sum payments would subsequently be unavailable for optional timing of deductions under Treasury Regulation Sec. 1.612-3(b)(3) by the publication of a proposed modification of the regulation on November 2, 1976, see 41 Fed.Reg. 48,133 (1976), wherein it was proposed that the regulation be amended to provide in part:
 
 
 17
 (b) Advanced royalties.
 
 
 18
 * * * *
 
 
 19
 (3) The payor shall treat the advanced royalties so paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. However, in the case of advanced royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the minimum royalty payments as deductions from gross income for the year in which the minimum royalties are paid or accrued. For purposes of this paragraph, a minimum royalty provision requires that substantially uniform royalty payments be made at least annually over the life of the lease....
 
 
 20
 41 Fed.Reg. 48,133-34 (1976). A final version of the amendment was adopted in modified form on December 14, 1977, and applied retroactively to October 29, 1976. T.D. 7523, 1978-1 C.B. 194. Both the proposal and the final amendment added a qualification that, to be deductible, annual payments in connection with advanced minimum royalties be made with "substantial uniformity." Thus, a deductibility option was, in August 1977, available only to payors of a uniform annual royalty on a specific number of units of mineral.
 
 
 21
 We are not persuaded by appellants' contention that the question of whether their lease contains a qualified minimum royalty provision should not be governed by the amended terminology requiring that royalty payments be made with "substantial uniformity." As the Claims Court correctly pointed out, the proposed amendment, in 1976, was sufficient to put appellants on notice, in 1977, that non-uniform annual royalty payments would not qualify for optional deductibility under the regulation. Similar conclusions have been reached in the Ninth and Eleventh Circuits. See Wendland v. Commissioner, 739 F.2d 580, 581 (11th Cir.1984) and Redhouse v. Commissioner, 728 F.2d 1249, 1252 (9th Cir.), cert. denied, 469 U.S. 1034 (1984).
 
 
 22
 Appellants also assert that the IRS failed to comply with the notice, comment, and publication requirements of the Administrative Procedure Act, 5 U.S.C. Secs. 553(b), (c), and (d) in promulgating the 1977 amendment to Treas.Reg. Sec. 1.612-3(b)(3), and that this failure invalidates the entire amendment.[2] The Claims Court, however, found that there was no necessity for the IRS to have done so because the matter constituted an interpretative ruling. See 26 U.S.C. Sec. 7805(a); Thomas Int'l Ltd. v. United States, 773 F.2d 300, 303 (Fed.Cir.1985), cert. denied, 106 S.Ct. 1261 (1986). Interpretative rulings are excepted from notice and comment requirements. See 5 U.S.C. Secs. 553(b)(A), (d)(2). We agree that the nature of the amendment was to interpret an existing rule and did not require notice, comment and publication pursuant to 5 U.S.C. Secs. 553(b), (c), and (d). See Redhouse, 728 F.2d at 1253. Furthermore, the proposed modification was conducted in compliance with the notice and comment requirements and a new notice and comment period was not required under 5 U.S.C. Sec. 553 before the final version of a proposed regulation was adopted. The notice and comment provisions of the Administrative Procedure Act are meant to advise interested persons of the subjects and issues of the rule making process. An agency may promulgate a rule which differs from the proposed rule without reopening the comment period. Were the law otherwise, rulemaking might never be terminated. Kennecott v. United States Environmental Protection Agency, 780 F.2d 445, 460 (4th Cir.1985), cert. denied, 107 S.Ct. 67 (1986); International Harvester Co. v. Ruckelshaus, 478 F.2d 615, 632 & n. 51 (D.C.Cir.1973).
 
 
 23
 Appellants argue error in the retroactive adoption of the December 1977 amendment of Treasury Regulation Sec. 1.612-3(b)(3) and in a retroactive application to their August 1977 sublease. We disagree. The extent to which newly promulgated regulations are to be applied retroactively is a matter for discretion of the IRS. 26 U.S.C. Sec. 7805(b); Redhouse, 728 F.2d at 1251. The decision to make a ruling retroactive will stand unless it constitutes an abuse of discretion. Wendland, 739 F.2d at 581 (11th Cir.1984), citing Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184 (1957). There was public notice of the impending amendment, and of the suspension of Revenue Rulings 70-20 and 74-214. And, as the Ninth and Eleventh Circuits have held, the 1977 amendment did not change settled law. See Wendland, 739 F.2d at 582; Redhouse, 728 F.2d at 1252. Under the circumstances retroactive adoption, in accordance with 26 U.S.C. Sec. 7805(b), was not an abuse of discretion by the IRS.
 
 
 24
 The final version of the regulation contained portions which were changed from the proposed version[3] and which had not been published for comment. The Claims Court, below, held that despite the propriety of retroactive adoption, it was an abuse of discretion for the IRS to apply to appellants those portions of the final regulation which were not contained in the proposed regulation to appellants. However, this did not change the conclusion that retroactive adoption and application of the balance of the amendment was proper. This has no impact on the result that appellants' royalty deduction was improper because it was not based upon an advanced minimum royalty clause requiring substantially uniform payments.
 
 
 25
 We are unpersuaded by appellants' argument that the Claims Court used an improper method of determining that the royalty payments were not substantially uniform by looking at the range of payments.
 
 
 26
 Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate when there are no genuine issues of material fact and the matter is determined on the law. United States v. Diebold, 369 U.S. 654, 655 (1962). We agree with the Claims Court that the material facts in this matter are undisputed. Disagreement is on the applicable law. Upon review of this matter, we find that the Claims Court has correctly applied the law.
 
 
 27
 With no genuine issues of material fact remaining, and holding that the Claims Court committed no errors of law, we affirm the decision granting summary judgment and dismissing the case.
 
 
 
 *
 The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986
 
 
 [1]
 As adopted in 1960 the regulation restated language of a 1940 amendment to Treas.Reg. Sec. 9.23(m)-10(e) which had first provided the option
 
 
 [2]
 Section 553(b) requires that notice of a regulation be given by publishing it in the Federal Register. Section 553(c) requires that interested persons be given an opportunity to submit comments. Section 553(d) requires that it be published not less than 30 days before its effective date
 
 
 [3]
 The final version made reference for the first time to the accounting rules of sections 446 and 461 of the IRS code. The Claims Court found that this had affected a change in law