## FOLEY MACHINERY CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27120-86.     Filed August 30, 1988.

*Benedict M. Kohl,* for the petitioner.
*Frank Agostino,* for the respondent.

### OPINION

RUWE, *Judge:** Respondent determined a deficiency in petitioner's Federal income tax for the taxable years 1981 and 1982 in the respective amounts of $89,574.58 and $264,854.92. The issues for decision are whether distributions which Foley Equipment, Co. (Equipment) made to petitioner during 1981 and 1982 may be recharacterized as nontaxable repayments of commissions paid in error, rather than actual distributions made with respect to petitioner's stock, or, in the alternative, whether petitioner should be allowed to recharacterize the distributions it received from Equipment as repayments of commissions pursuant to section 1.994-1(e)(5),[1] Income Tax Regs.

All of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner is a New Jersey corporation, the principal office of which is located in Piscataway, New Jersey. Petitioner

---

*By Order of the Chief Judge, this case was reassigned to Judge Robert P. Ruwe for disposition.

[1] All section references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.

sells Caterpillar parts and equipment pursuant to a Caterpillar franchise agreement. In addition to selling parts and equipment in the United States, petitioner sells parts and equipment to foreign purchasers. Petitioner files its Federal income tax returns on a calendar year basis. Petitioner timely filed its Federal income tax returns for the years 1981 and 1982 with the Internal Revenue Service Center, Holtsville, New York.

In 1975, petitioner formed Equipment as a wholly owned subsidiary to act as a commission agent on all of its foreign sales of export property. Petitioner has always been Equipment's sole shareholder. Equipment elected to be treated as a DISC for its first taxable year and complied with all the requirements for qualifying as a DISC. Equipment files its Federal income tax returns on a fiscal year basis with its fiscal year ending each November 30.

By letter dated December 1, 1975, petitioner and Equipment agreed to a method for determining the amount of Equipment's commissions on export sales of petitioner's products. The letter provided:

> This is to confirm our understanding that as to all export sales of our products in which you act as a commission agent, the commission will be determined under whichever of the formulas described in section 994 of the Internal Revenue Code results in the greater amount of taxable income to you as computed under such section.

Pursuant to written and oral agreements, petitioner paid Equipment commissions on petitioner's international sales as well as interest on producer loans as permitted under section 993. The calculation of the amount of commissions owed by petitioner to Equipment was made monthly, based on the 4-percent gross receipts method and the 50-50 combined taxable income method described in section 1.994-1(c), Income Tax Regs. Commission payments from petitioner to Equipment were made periodically, no less frequently than annually. Interest on producer loans was paid to Equipment upon the maturity and renewal of each loan as it came due during the year.

Under the DISC rules, a portion of petitioner's commission payments to Equipment was deemed distributed back to petitioner, whether actually distributed or not, as a taxable dividend pursuant to section 995(b)(1). The deemed distribu-

tions became previously taxed income which could be distributed tax free to petitioner at any time. Sec. 996(a)(3).

In each of Equipment's fiscal years from its inception through the taxable years in question here, Equipment's actual distributions[2] to petitioner were computed so that such payments would not exceed Equipment's previously taxed income. If Equipment's actual distributions to petitioner exceeded Equipment's previously taxed income, the excess over previously taxed income would be taxable to petitioner as a DISC dividend.

Equipment lost its qualification as a DISC following its fiscal year ended November 30, 1980, because it did not meet the requirements set forth by section 1.993-4(c)(1), Income Tax Regs.[3]

Sometime after November 30, 1982, respondent first notified petitioner that Equipment failed to qualify as a DISC. Since petitioner and Equipment were unaware of the disqualification before then, they continued their practice of making payments to one another during Equipment's 1981 and 1982 fiscal years. In fiscal year ended November 30, 1981, petitioner paid Equipment what it considered to be commissions on direct foreign sales and interest on producer loans, in amounts totaling $482,658 and $184,143.33, respectively. Based on these figures, Equipment computed that a deemed distribution of $426,427.01 was made to petitioner during the year. Equipment paid $362,022.16 to petitioner, which both petitioner and Equipment treated as an actual distribution made out of previously taxed income. Petitioner excluded this distribution from gross income pursuant to section 996(a)(3).

During the fiscal year ended November 30, 1982, petitioner was still unaware that Equipment was not a qualified DISC. During this fiscal year, petitioner paid Equipment what it calculated to be commissions on direct foreign sales in the amount of $220,340 and interest on producer loans in the amount of $176,948.75. Based on these figures, Equip-

---

[2]An "actual distribution" is a payment made to a shareholder with respect to its stock. Amounts actually distributed to a shareholder of a DISC are includable in its gross income to the extent they exceed previously taxed income. Sec. 1.995-1(c)(1), (3), Income Tax Regs.

[3]This regulation concerns producer's loans. Equipment failed to qualify as a DISC because certain loans which it made failed to qualify under sec. 1.993-4(c)(1), Income Tax Regs., as producer's loans, which are defined in sec. 1.993-4(a)(1), Income Tax Regs.

ment computed that a deemed distribution of $298,153.59 was made to petitioner. Equipment paid $555,191 to petitioner, which both petitioner and Equipment treated as an actual distribution made out of previously taxed income. Petitioner excluded this distribution from gross income pursuant to section 996(a)(3).

When Equipment lost its qualification as a DISC, its previously taxed income totaled $402,538.67. Equipment's previously taxed income could not have increased after disqualification except by way of section 995(b)(2).[4] Equipment's previously taxed income increased to $539,254.67 during fiscal year 1982 since Equipment computed that a section 995(b)(2) deemed distribution of $136,716 was made during that year.[5]

When Equipment lost its DISC qualification, its accumulated DISC income totaled $1,367,159.87. Secs. 1.995-3(a), 1.996-3(c)(1)(iii), Income Tax Regs.

Because of Equipment's disqualification as a DISC, respondent disallowed petitioner's deductions for commissions paid to Equipment during its disqualified years. Petitioner does not contest this determination. Respondent decreased petitioner's reported income for fiscal years 1981 and 1982 in the amount of the reported deemed distributions because petitioner was no longer required by section 995(b)(1) to include Equipment's deemed distributions in income. Petitioner does not contest this determination. Respondent also determined that, to the extent Equipment's 1981 and 1982 actual distributions to petitioner exceed the amount of its previously taxed income, the distributions must be treated by petitioner as taxable dividends.

Petitioner argues that either the distributions which it received from Equipment in 1981 and 1982 are nontaxable repayments of commissions paid in error, not actual distributions with respect to petitioner's stock, or, alternatively, the distributions should be recharacterized as repayments of erroneously paid commissions pursuant to the principles set forth in section 1.994-1(e)(5), Income Tax Regs.

---

[4]Under sec. 995(b)(2), a shareholder of a corporation which is disqualified from being a DISC is deemed to receive its pro rata share of accumulated DISC income over a period of 10 years following the year of disqualification. Sec. 1.995-3(a), (b), Income Tax Regs.

[5]Petitioner was required to include the $136,716 deemed distribution in income tax in taxable year 1982. Sec. 1.995-3(a), Income Tax Regs.

## Background

The DISC provisions were enacted by Congress in 1971[6] to provide tax incentives for United States firms to increase their exports and to remove the previous tax disadvantages of firms engaged in export activities through domestic corporations instead of through foreign subsidiaries. *Thomas International Ltd. v. United States,* 773 F.2d 300, 301 (Fed. Cir. 1985).[7] The DISC may be no more than a shell corporation which performs no functions other than to receive commissions on foreign sales made by its parent. *Thomas International Ltd. v. United States, supra* at 301; *Gehl Co. v. Commissioner,* 795 F.2d 1324 (7th Cir. 1986), affg. in part and vacating in part a Memorandum Opinion of this Court.

Under section 991, DISC organizations are not subject to Federal income taxation.[8] Roughly one-half of the earnings and profits of a DISC are taxable each year to the shareholders as deemed distributions. Sec. 995(b)(1); *Westinghouse Electric Corp. v. Tully,* 466 U.S. 388, 391-392 (1984); *Gibbons International, Inc. v. Commissioner,* 89 T.C. 1156 (1987). Any distributions made by the DISC to its shareholders out of previously untaxed earnings and profits are taxable to the shareholders under sections 301 and 316; any distributions made to the shareholder out of previously taxed earnings and profits are not taxable to the shareholders. The retained earnings and profits of a DISC that are not taxed currently remain exempt from taxation until actually distributed to the shareholders (sec. 996(a)(1)), until a shareholder disposes of his DISC stock in a taxable transaction (sec. 995(c)), or until the corporation ceases to qualify as a DISC (sec. 995(b)(2)). *Gehl Co. v. Commissioner, supra* at 1327.

---

[6]Secs. 501-507, Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497, 535-553.

[7]See also *Westinghouse Electric Corp. v. Tully,* 466 U.S. 388 (1984).

The DISC provisions have been phased out and are generally inapplicable to transactions which occur in taxable years ending after Dec. 31, 1984. Secs. 801-805, Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 985. See B. Bittker and J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 17.14, p. 17-54 (5th Ed. 1987).

[8]SEC. 991. TAXATION OF DOMESTIC INTERNATIONAL SALES CORPORATION.

For purposes of the taxes imposed by this subtitle upon a DISC (as defined in section 992(a)), a DISC shall not be subject to the taxes imposed by this subtitle except for the tax imposed by chapter 5.

*The 1981 and 1982 Distributions*

The first issue for decision is whether distributions which petitioner received from Equipment in 1981 and 1982 are actual distributions and are taxable to petitioner to the extent they exceed previously taxed income. In 1981 and 1982, Equipment made actual distributions of earnings and profits to petitioner as sole shareholder. This was exactly what Equipment and petitioner intended. The amount of these distributions was calculated so that all of the distributions would be out of previously taxed income. Petitioner was properly trying to shield from taxation as much of its export-related profits as the DISC provisions allowed. Petitioner's calculations of the amount of distributions that could be made out of previously taxed income was in error because of the impact the disqualification had on determining the amount of previously taxed income. Having subsequently ascertained that Equipment had been disqualified as a DISC during those years, petitioner is now attempting to recharacterize the actual distributions as repayments of mistakenly paid commissions.

Petitioner must accept the tax consequences of the transactions as they were structured. *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974); *Whitcomb v. Commissioner*, 733 F.2d 191 (1st Cir. 1984), affg. 81 T.C. 505 (1983); *Wolter Construction Co. v. Commissioner*, 634 F.2d 1029, 1038-1039 (6th Cir. 1980), affg. 68 T.C. 39 (1977); *Paula Construction Co. v. Commissioner*, 58 T.C. 1055 (1972), affd. by unpublished opinion 474 F.2d 1345 (5th Cir. 1973); *Joyce v. Commissioner*, 42 T.C. 628, 636-637 (1964). In *Paula Construction Co.*, the taxpayer elected to be treated as a Subchapter S corporation. In 1965 and 1966, when the taxpayer believed that its Subchapter S election was still in effect, the taxpayer made distributions to its shareholders, which both the corporation and shareholders treated as dividend distributions. Two of the shareholders had performed substantial services for the taxpayer which would have justified the payment of compensation. Subsequently, when the taxpayer became aware that its Subchapter S status had been terminated for 1965 and 1966, it attempted to recharacterize the 1965 and 1966 distributions as compensation payments. The court held

that, because no amounts were originally paid as compensation, the taxpayer was not entitled to recharacterize the distributions as compensation in order to claim a deduction under section 162.

The question is what was the intent of the parties when the distributions were made * * *. None of the evidence indicates that at the time those payments were made they were intended to be compensation for services performed. [*Paula Construction Co. v. Commissioner, supra* at 1059-1060.]

In this case, both petitioner and Equipment were unaware that Equipment had lost its DISC status when the 1981 and 1982 distributions were made. Equipment intended to make actual distributions of earnings to petitioner as sole shareholder. The fact that the tax impact of the distribution was different from that expected cannot be a basis for recharacterization. See *Paula Construction Co. v. Commissioner, supra.*

Petitioner argues that mistake of fact, i.e., its improper payment of commissions, requires that Equipment's distributions be treated as repayments of commissions. Petitioner asserts that Equipment had an obligation to repay the 1981 and 1982 commissions that petitioner paid to Equipment. Throughout 1981 and 1982, however, Equipment had accumulated earnings and profits in excess of the distributions and it is clear that both petitioner and Equipment intended to make a distribution to petitioner out of Equipment's earnings and profits. They both treated the payments by Equipment as distributions to petitioner. A case must be decided on what is actually done and, even though a taxpayer is mistaken about the tax treatment of a transaction, the treatment of the payment cannot be changed retroactively. See *Joyce v. Commissioner, supra.* The principal mistake of fact was the miscalculation of Equipment's previously taxed income. Petitioner intended that the distributions not exceed available previously taxed income. Despite Equipment's disqualification as a DISC, the amount of the distribution from Equipment to petitioner in fiscal year ended November 30, 1981, was in fact less than the available amount of previously taxed income. In fiscal year 1982, a substantial portion of Equipment's distribution to petitioner did not exceed available previously taxed income. Although the distributions or their amounts may have been

made based upon an erroneous presumption, they are nonetheless distributions to petitioner. Accordingly, Equipment's 1981 and 1982 distributions to petitioner must be treated as actual distributions in accordance with petitioner's and Equipment's treatment of the transactions when they occurred.

## The Relief Provision

The second issue for decision is whether the relief provisions of section 1.994-1(e)(5), Income Tax Regs., and Rev. Proc. 85-45, 1985-2 C.B. 505, may be invoked by petitioner in this case, allowing petitioner to treat the actual distributions it received from Equipment as repayments of commissions to the extent of previously taxed income.

Respondent initially contends that we should not consider the applicability of section 1.994-1(e)(5), Income Tax Regs., and Rev. Proc. 85-45, supra, because it was raised for the first time by petitioner on brief. Rule 34(b)(4)[9] requires, in part, that the petition contain clear and concise assignments of each and every error alleged. Moreover, it is well settled that issues not raised by the pleadings, but argued for the first time on brief, should not be considered. Greenberg v. Commissioner, 25 T.C. 534, 537 (1955). In the petition, petitioner requested relief by stating:

Petitioner prays that the Court hear this proceeding and:

1. determine that the payments petitioner received from Equipment in 1981 and 1982 be treated as nontaxable repayments of amounts petitioner erroneously paid to Equipment and not as unrelated payments from Equipment's previously taxed income and accumulated DISC income.

Section 1.994-1(e)(5), Income Tax Regs., and Rev. Proc. 85-45, supra, provide a mechanism for allowing a DISC to repay excess commissions paid by a parent corporation without the parent corporation's being taxed. Petitioner's invocation of this regulation and revenue procedure would be expected based upon the allegations in the petition. Respondent is not in a position to claim surprise, and there

---

[9]Rule 34(b)(4), which became effective Jan. 1, 1974, was derived from the former Tax Court Rules 6 and 7(c)(4).

will be no prejudice to respondent by allowing petitioner to make this argument.

Section 994 provides that, in any transaction between a DISC and a related supplier,[10] a person related to a DISC may determine the allowable commission paid to the DISC by its choice of: (1) The "4-percent" gross receipts method; (2) the "50-50" combined taxable income method; and (3) the section 482 method.[11] See *Bently Laboratories, Inc. v. Commissioner,* 77 T.C. 152, 163-164 (1981). The intercompany pricing rules of section 994 were enacted to allow a more favorable allocation of income between DISCs and related parties than would ordinarily be permitted:

Under the intercompany pricing rules of present law, a sale to a related person generally must be made on an arm's length basis * * *. Your committee believes it is desirable to avoid the complexities of the present pricing rules in the case of sales by a domestic parent corporation * * * to a DISC *and also to provide encouragement for the operation of DISC's.* In view of this, your committee has provided two pricing rules which may be used in determining the permissible profits—although in excess of profit under arm's length rules and regardless of the sales price actually charged—which a DISC may earn on products which it purchases from a related company and then resells for export. * * * [S. Rept. 92-437 (1971), 1972-1 C.B. 559, 618. Emphasis added.]

The regulations under section 994 provide a relief provision which allows a related party, in certain circumstances, to receive a repayment of excess commission payments

---

[10] A "related supplier" is a related party which singly engages in a transaction directly with a DISC which is subject to the rules of sec. 994 and sec. 1.994-1, Income Tax Regs. Sec. 1.994-1(a)(3)(ii), Income Tax Regs. Petitioner in this case is a "related supplier."

[11] Sec. 994 provides:

(a) IN GENERAL.—In the case of a sale of export property to a DISC by a person described in section 482, the taxable income of such DISC and such person shall be based upon a transfer price which would allow such DISC to derive taxable income attributable to such sale (regardless of the sales price actually charged) in an amount which does not exceed the greatest of—

(1) 4 percent of the qualified export receipts on the sale of such property by such DISC * * *.

(2) 50 percent of the combined taxable income of such DISC * * *, or

(3) taxable income based upon the sale price actually charged (but subject to the rules provided in section 482).

(b) RULES FOR COMMISSIONS, RENTALS, AND MARGINAL COSTING.—The Secretary shall prescribe regulations setting forth—

(1) rules which are consistent with the rules set forth in subsection (a) for the application of this section in the case of commissions, * * *.

See sec. 1.994-1, Income Tax Regs., for a complete discussion of the intercompany pricing rules.

which it made to a DISC without being taxed on the repayment. Sec. 1.994-1(e)(5), Income Tax Regs. Under section 1.994-1(e)(5), Income Tax Regs., when a DISC is paid a commission by its parent pursuant to section 994, and respondent makes an adjustment which redetermines the proper amount of commissions payable to the DISC, the parent is permitted to establish an account receivable from the DISC which may then be repaid without being taxed to the parent corporation. Or, in lieu of establishing an account receivable for all or part of an amount due a related supplier, the DISC and the related supplier are permitted to treat all or part of any distribution which was made by the DISC out of its previously taxed income as a repayment of commission (and not as a distribution) made as of the date the distribution was made. Sec. 1.994-1(e)(5), Income Tax Regs.; Rev. Proc. 85-45, 1985-2 C.B. 505.

The legislative history provides no guidance as to whether section 1.994-1(e)(5), Income Tax Regs., and Rev. Proc. 84-45, *supra*, are available when the excess commission payments are paid by a related supplier to an entity which has been disqualified as a DISC. Nowhere in the regulations does it indicate that this relief provision is available when the related party makes an excess commission payment which is attributable to a year in which the DISC has been disqualified. Moreover, Rev. Proc. 85-45, *supra*, provides in pertinent part:

The treatment provided in this revenue procedure will be available with respect to all transactions *for any taxable year of a DISC* to which * * * commissions paid by a related supplier to the DISC, as originally determined by the parties under section 994 * * * are subsequently redetermined by the Service in a manner which results in * * * reduction of commissions. * * * [Rev. Proc. 85-45, 1985-2 C.B. at 506. Emphasis added.]

Since neither the legislative history nor the statute indicates that the relief provisions of section 1.994-1(e)(5), Income Tax Regs., are available when excess commissions are paid to a disqualified DISC, it would be difficult to conclude that an entity which is no longer qualified as a DISC should obtain the benefits of the provision. We note that this conclusion is fully in keeping with the fact that

the intercompany pricing rules of section 994 are available only to qualified DISCs and related parties.

Having been disqualified as a DISC during taxable years 1981 and 1982, Equipment became a "former DISC" during those years. Section 992(a)(3) defines "former DISC":

"Former DISC."—For purposes of this title, the term "former DISC" means, with respect to any taxable year, a corporation *which is not a DISC* for such year but which was a DISC in a preceding taxable year and at the beginning of the taxable year has undistributed previously taxed income or accumulated DISC income. [Emphasis added.]

A "former DISC," however, is not entitled to invoke the provisions which pertain only to qualified DISCs. The legislative history contains the following comment:

There are two potential tax consequences resulting from the fact that the corporation was a DISC in a preceding taxable year: the corporation may have undistributed amounts of tax deferred income which are to be taxed to its shareholders or it may have undistributed amounts of income which previously had been taxed to the shareholders but not actually distributed to them. [S. Rept. 92-437 (1971), 1972-1 C.B. 559, 611.]

Petitioner and Equipment, a "former DISC," may not invoke the relief provision of section 1.994-1(e)(5), Income Tax Regs., since the provision does not relate to the tax treatment of either undistributed previously taxed or previously untaxed income upon disqualification. Thus, even if petitioner made excess commission payments to Equipment during taxable years 1981 and 1982, because Equipment was not a qualified DISC during these taxable years, Equipment's 1981 and 1982 actual distributions to petitioner may not be recharacterized as repayments of commissions pursuant to section 1.994-1(e)(5), Income Tax Regs.

In the present case, the issue involves timing. If petitioner had been allowed to recharacterize the actual distributions as repayments of commissions, accumulated DISC income would not have been reduced. The accumulated DISC income would be taxable to petitioner over a 10-year period following the year of disqualification. Under our determination, however, petitioner is taxable on the actual distributions which it received during 1981 and 1982 to the extent

they exceed previously taxed income.[12] Accordingly,

> *Decision will be entered for the respondent.*

---

[12]To the extent that the actual distributions in 1981 and 1982 reduce accumulated DISC income, petitioner's deemed distributions under sec. 995(b)(2) will be reduced. The last installment of the sec. 995(b)(2) distributions will be reduced first, and then the preceding scheduled installments will be reduced in reverse order. Sec. 1.995-3(e), Income Tax Regs.