ESTATE OF ALICE B. HOLLO, DECEASED, STEVE J. HOLLO, SR., EXECUTOR and STEVE J. HOLLO, SR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hollo v. Commissioner
Docket No. 4836-88
United States Tax Court
T.C. Memo 1990-449; 1990 Tax Ct. Memo LEXIS 493; 60 T.C.M. (CCH) 570; T.C.M. (RIA) 90449; August 21, 1990, Filed *493 Decision will be entered under Rule 155. John Kennedy Lynch and Paul K. Kavanaugh, for the petitioners. Carol A. Szczepanik, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
Section 6651(a)(1) [1]
1977
$ 13,019.36
$ 2,469.84  1978
799.00
--   1979
878.00
--   1980
11,523.15
378.18 1981
14,719.57
--   1982
6,767.88
--   1983
7,062.49
--   After concessions, the issues for decision are: (1) whether petitioners had unreported gain from the sale of land in 1977; (2) whether they are entitled to claimed losses with respect to property which they rented to their son's wholly owned corporation; and (3) whether they are liable for an addition to tax under section 6651(a)(1) for failure to timely file their 1977 Federal income tax return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits *494 are incorporated herein by this reference. Steve J. Hollo, Sr. and Alice B. Hollo were husband and wife during the years in issue. Alice B. Hollo died on July 23, 1985, which was prior to the filing of the petition in this case. Steve J. Hollo, Sr. (individually referred to as petitioner) is the executor of his wife's estate; he resided in Strongsville, Ohio at the time the petition was filed. Prior to the years in issue, petitioner owned a successful window cleaning business; during the years in issue, he was a painting contractor. Mrs. Hollo maintained the business books and records and was in charge of the Hollos' financial matters. Petitioner and Mrs. Hollo filed joint income tax returns for each of the years in issue. They obtained an extension of time to file their 1977 income tax return until October 15, 1978; however, the 1977 return was not filed until March 1979. The Strongsville Parcel
In 1969, the Hollos purchased a parcel of land located on Westwood Drive in Strongsville, Ohio (sometimes referred to as the Strongsville parcel) for $ 53,300. On August 17, 1977, they sold the land, less a portion retained for their residence, for $ 120,000 to Bailey-Hollo Development *495 (Bailey-Hollo), a corporation which had been formed by petitioner and William Bailey to develop and subdivide the Strongsville parcel into residential lots and thereafter sell the subdivided lots. (Petitioner owned 50 percent of the stock of Bailey-Hollo and was its president.) No cash was received at the time of sale; rather, the Hollos received a note from Bailey-Hollo for the $ 120,000 purchase price. Principal payments under the note were "payable as the corporation desired," except that the entire principal amount ($ 120,000) had to be paid within 36 months from the execution date of the note. The note (which was secured by a mortgage on the Strongsville parcel) bore interest at the rate of 5 percent per annum, payable annually. It was understood that as each subdivided lot was sold, Bailey-Hollo would make a $ 3,000 principal payment on the note. Bailey-Hollo subdivided the Strongsville parcel into 40 residential lots, including the lot retained by the Hollos for their personal residence. Sales of the lots were as follows: Year
Number of Lots Sold
Total Sales Prices
1978
10 $ 156,000 1979
11 214,500 1980
2
32,500 1982
1
18,500 1983
5
56,000 $ 477,500 Although it had been agreed that *496 the Hollos would receive a $ 3,000 principal payment on the note from the sale of each lot, Bailey-Hollo did not make its first principal payment on the note until August 1979. The note was paid in full in 1984. The Hollos did not elect to treat the 1977 sale of the Strongsville parcel as an installment sale on their 1977 tax return, nor did they report any gain from the transaction prior to 1984. Instead, they reported the entire gain on their 1984 return. The Pearl Road Property
In 1976, the Hollos purchased land in Middleburg Heights, Ohio (Pearl Road property) for $ 100,000. In 1977, petitioners' son, Steve Jr., graduated from mortuary school and desired to operate his own funeral home. Petitioners had recently sold a motel and had cash available for investment. Following consultation with their accountant regarding its feasibility, petitioners decided to build a funeral home on the Pearl Road property (which would be operated by Steve Jr.). The funeral home was completed around the end of September 1977. Petitioner and Steve Jr. orally agreed that the latter would rent the funeral home for $ 5,000 per month and would be responsible for the payment of all real estate taxes *497 assessed against the property as well as the payment of all maintenance, insurance, and utility costs and expenses. Petitioners' attorney prepared a written lease agreement containing the terms agreed upon. However, the lease was never executed. From October 1977, through March 1987, Steve J. Hollo Funeral Home, Inc. (Steve Jr.'s wholly owned corporation) operated the funeral home. During this period, Steve Jr.'s corporation paid the real estate taxes and utilities. Steve Jr. maintained the property; however, no monthly rental payments were made to petitioners. Petitioners did not attempt to lease the funeral home to anyone else between 1977 and 1984. In 1984, petitioner contacted a realtor about selling the funeral home. He received an offer to purchase the funeral home from A. J. Tomon and Sons Funeral Home, Inc. (Tomon and Sons) in 1984 at a purchase price of $ 750,000. Believing that the property was worth $ 1 million, petitioner rejected the offer. On February 26, 1987, petitioner entered into a lease with an option to purchase agreement with Tomon and Sons with respect to the Pearl Road property. The term of the lease was for 5 years, beginning April 1, 1987. The option *498 price was $ 750,000. The 5 year rental payments totalled $ 195,000 and were "fully creditable to apply against" the $ 750,000 option price. The option expires on August 1, 1992. Steve Jr. has resided on the Pearl Road property since 1977. He has been employed by Tomon and Sons since April 1987. For the years in issue, the Hollos claimed the following depreciation deductions with respect to the funeral home: Year
Amount
1977
$  3,865
1978
14,927
1979
14,927
1980
14,927
1981
14,927
1982
14,927
1983
[2] 16,052
During the years in issue, the Hollos owned several other rental properties and claimed rental expense deductions. In his notice of deficiency, respondent disallowed the depreciation deductions and repair expense claimed with respect to the funeral home for the years in issue. Respondent further determined that the Hollos had an unreported long-term capital gain of $ 66,700 ($ 120,000 sales price less basis of $ 53,300) in 1977 from the sale of the Strongsville parcel. OPINION 1. Long -Term Capital Gain
The first issue is whether the Hollos had an unreported long-term capital gain upon receipt of the note *499 in 1977. Resolution of this issue turns on whether the note had an ascertainable fair market value. Respondent contends that the note's fair market value was its $ 120,000 face amount. Petitioner contends otherwise. Section 1001(a) provides that the gain from the sale or other disposition of property shall be the excess of the amount realized over its adjusted basis. Section 1001(b) provides that the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of property (other than money) received. Fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. McShain v. Commissioner, 71 T.C. 998, 1004 (1979). Whether property, such as the note, has an ascertainable fair market value and the amount of such value are factual questions to be resolved on the basis of all the facts and circumstances. Riss v. Commissioner, 368 F.2d 965 (10th Cir. 1966), affg. a Memorandum Opinion of this Court. Petitioners have the burden of proving that the note has no ascertainable value. McCormac v. United States, 424 F.2d 607, 619 (Ct.Cl. 1970); *500 Rule 142(a). If the value of the note is not ascertainable, then the sales transaction is left open so that petitioners need not report any gain until the amount actually received by them exceeds their basis. Burnet v. Logan, 283 U.S. 404 (1931). Here, we conclude that petitioners failed to establish that the note had no ascertainable value. The amount of the note was fixed. No proof was offered that the note was not marketable nor was any evidence introduced as to whether petitioner attempted to dispose of it. The note was secured by the Strongsville parcel. No evidence was introduced to show that such parcel was not ample security for the note. In fact, the evidence indicates that the collateral had appreciated in value. Petitioners have not challenged the $ 120,000 fair market value of the Strongsville parcel in 1977. Thus, we are able to ascertain the value of the note from the fair market value of the Strongsville parcel. Bar L. Ranch, Inc. v. Phinney, 426 F.2d 995 (5th Cir. 1970); and Philadelphia Park Amusement Co. v. United States, 126 F.Supp. 184 (Ct.Cl. 1954). Accordingly, we hold that the note had a fair market value equal to its $ 120,000 face amount. Respondent's *501 determination of the amount of the long-term capital gain derived from the sale of the Strongsville parcel is sustained. The Hollos did not report the sale or any income from the 1977 sale of the Strongsville parcel until they filed their 1984 income tax return. On brief, for the first time, they argue that they are entitled to report the sale on the installment method under section 453. It is well settled that issues raised for the first time on brief are not to be considered. Foley Machinery Co. v. Commissioner, 91 T.C. 434, 441 (1988); Greenberg v. Commissioner , 25 T.C. 534, 537 (1955). We therefore decline to consider the availability of installment sales treatment to the Strongsville parcel sale. 2. Deductions for Depreciation and Repair Expenses
The next issue is whether petitioners are entitled to deduct depreciation and a repair expense in connection with a funeral home used by their son's wholly owned corporation on a rent-free basis. Section 167(a) allows a depreciation deduction for property used in a trade or business or held for the production of income. Section 162 provides for the deduction of ordinary and necessary expenses paid or incurred in carrying on a trade *502 or business, and section 212 allows for a deduction for ordinary and necessary expenses paid or incurred for the production or collection of income. Whether property is used in a trade or business or held for the production of income, as contrasted to personal purposes, depends on the taxpayer's profit objective as determined by all of the facts and circumstances of the particular case. A taxpayer must engage in an activity with the objective of making a profit in order to fully deduct expenses under either sections 162 or 212. Golanty v. Commissioner , 72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The proper standard for deductibility under sections 162 or 212 is whether the taxpayers engaged in the activity with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Whether petitioners engaged in the funeral home rental activity with the requisite objective of making a profit is one of fact to be resolved on the basis of all the surrounding facts and circumstances. Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981). In making this determination, *503 more weight is accorded to objective facts than to the taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs. The burden of proving the requisite objective is on petitioners. Sabelis v. Commissioner, 37 T.C. 1058, 1062 (1962); Rule 142(a). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors, which is in large part a synthesis of prior case law, to be considered in determining whether an activity is engaged in for profit. Benz v. Commissioner, 63 T.C. 375, 382-383 (1974). These factors include: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling. Rather, the *504 facts and circumstances of the case taken as a whole are determinative. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs.
The facts and circumstances of this case establish that the Hollos did not possess the requisite profit objective. They permitted their son and his corporation to use the funeral home on a rent-free basis for over nine years. They made no affirmative attempt to rent out the property until 1984. This was not the only rental property which petitioners owned, yet it was the only one in which a tenant never paid rent. Their actions convince us that the funeral home was held for personal purposes, i.e., for the benefit of their son, Steve Jr. We have no doubt that Steve Jr. maintained the property during his rent-free occupancy. Petitioners argue that their son's occupancy provided security against vandalism. But there is no indication that this security against vandalism in any way approximated the fair rental value of the funeral home. Nor is there any indication that the appreciation of the property would recompense petitioner for the years of rent-free occupancy. Had petitioners held the funeral home with an actual and honest *505 objective of making a profit, they most certainly would have attempted to rent it out at the highest possible price. Instead, they permitted their son to use the funeral home on a rent-free basis over an extended period of time. Such action negates the requisite profit objective and supports our view that petitioners sought to establish their son in business. Accordingly, we conclude that petitioners are not entitled to the claimed repair expense or depreciation deductions. 3. Section 6651(a)(1) Additions to Tax
Respondent determined additions to tax under section 6651(a)(1) for 1977 and 1980. Respondent now concedes the addition for 1980. Section 6651(a)(1) imposes an addition to tax for the failure to timely file a required return unless such failure is due to reasonable cause and not due to willful neglect. Petitioners bear the burden of proving that they were not negligent. Ehrlich v. Commissioner, 31 T.C. 536, 540 (1958); Rule 142(a). Petitioners did not file their 1977 Federal income tax return until several months after the extension date expired. Petitioner's accountant testified that: (1) around October 15, 1978, he determined that no tax was due with the 1977 return *506 because the Hollos had a nominal amount of income for the year (the accountant was not informed of the sale of the Strongsville parcel to Bailey-Hollo until 1980), and (2) he had problems obtaining information from the contractor who built the funeral home with respect to the costs for the various components of the building, which information was needed in the calculation of component depreciation. Thus, the accountant felt justified in filing petitioners' 1977 return late, rather than filing the return timely and subsequently amending it. The advice given by the accountant turned out to be incorrect; petitioners must bear the consequences of their late filing. As we noted in Jackson v. Commissioner, 86 T.C. 492, 539 (1986), affd. 864 F.2d 1521 (10th Cir. 1989), advice that a return does not have to be timely filed because no taxes are due with the return is different from advice that no return need be filed. We therefore sustain respondent's determination with respect to this issue. To reflect the foregoing and concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. This figure is comprised of a $ 14,927 depreciation deduction and $ 1,125 in repairs.↩