WILLIAM DAVIS EVANS AND JOANN WALKER EVANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket No. 28846-92
United States Tax Court
T.C. Memo 1994-517; 1994 Tax Ct. Memo LEXIS 525; 68 T.C.M. (CCH) 957; October 17, 1994, Filed *525 Decision will be entered under Rule 155. William D. Evans, pro se. For respondent: Deborah C. Stanley. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income tax: Additions to Tax Section Section Section Section
Year
Deficiency
6653(a)(1)(A) [1]
6653(a)(1)(B) 6653(a)(1)
6661(a)
1987
$ 9,267
$ 463 *
$ --
$ 2,317
1988
2,624
--
--
131
--
* 50 percent of the interest due on the portion of the underpayment
attributable to negligence. Respondent determined that the entire
underpayment was attributable to negligence.
The issues remaining for decision are: 1. Did petitioners have income for 1987 and 1988 as a result of certain payments made to petitioner William D. Evans (Mr. Evans) during *526 each of those years? We hold that they did. 2. Are petitioners liable for self-employment tax for 1987 and 1988? We hold that they are. 3. Are petitioners liable for the additions to tax under section 6653(a)(1)(A) and (B) for 1987 and under section 6653(a)(1) for 1988? We hold that they are. 4. Are petitioners liable for the addition to tax under section 6661(a) for 1987? We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners were residents of Roanoke, Virginia, at the time the petition was filed. On or about February 9, 1987, Mr. Evans, who was the sole stockholder of Valley Air Conditioning, Inc. (corporation), sold his stock in that corporation to three unrelated individuals (purchasers). Pursuant to the agreement between Mr. Evans and the purchasers (stock sale agreement), the purchase price for Mr. Evans' stock was $ 175,000, payable to him as follows: a cash payment of $ 30,000, a note in the amount of $ 135,000, and the transfer of the ownership of an insurance policy on Mr. Evans' life that had a cash value of $ 10,000. The stock sale agreement also provided that the corporation was to repay over a 12-year *527 period as provided therein certain advances (first note) made by Mr. Evans to the corporation in the amount of $ 93,098, plus accumulated interest thereon of $ 56,724.40, less advances of $ 6,908 made by the corporation to Mr. Evans. As part of the stock sale agreement, the corporation agreed to lease (lease agreement) certain real property from Mr. Evans for a three-year term commencing February 3, 1987. The lease agreement provided for monthly rent payments of $ 1,100, or $ 13,200 annually. At the time of the sale of Mr. Evans' stock, Mr. Evans, the purchasers, and the corporation modified the stock sale agreement (modified agreement). Pursuant to the modified agreement, Mr. Evans was to continue to receive $ 30,000 in cash plus the life insurance policy with a cash value of $ 10,000. However, instead of issuing Mr. Evans a $ 135,000 note as required by the stock sale agreement, the purchasers were obligated under the modified agreement to issue Mr. Evans a note for $ 60,000 (sales note). In addition, pursuant to an oral consulting agreement (consulting agreement), the corporation agreed to pay him consulting fees totaling $ 75,000 in 60 monthly installments of $ 1,250. *528 [2]
At some point after the stock sale agreement was finalized, Mr. Evans advanced the corporation an additional $ 41,000 for which a second note (second note) was signed. Pursuant to the lease agreement, the corporation paid Mr. Evans $ 12,100 (11 months [3] x $ 1,100) during 1987. Pursuant to the consulting agreement, the corporation paid Mr. Evans $ 10,000 (eight months x $ 1,250) during 1987. Petitioners did not include in their 1987 tax return any payments received by Mr. Evans during 1987 with respect to either the lease agreement or the consulting agreement. *529 Pursuant to the lease agreement, the corporation paid Mr. Evans $ 7,700 (seven months x $ 1,100) during 1988. Pursuant to the consulting agreement, the corporation paid Mr. Evans $ 8,750 (seven months x $ 1,250) during 1988. Petitioners did not include in their 1988 tax return any payments received by Mr. Evans during 1988 with respect to either the lease agreement or the consulting agreement. The corporation deducted the amounts paid to Mr. Evans during 1987 and January 1988 pursuant to the lease and consulting agreements as rent and consulting fees, respectively, in its return for its taxable year ended January 31, 1988. [4] That return was prepared on or about March 9, 1988. During the years at issue, the corporation was experiencing financial difficulties. It decided to borrow some money from the Colonial American National Bank (Bank) in an effort to alleviate its financial problems. In order to enhance the *530 likelihood of obtaining a Bank loan, the corporation decided to restructure its various agreements with Mr. Evans. Consequently, on or about March 15, 1988, Mr. Evans, the corporation, and the purchasers agreed to recharacterize (recharacterization agreement) as payments on the debt owed by the corporation to Mr. Evans the payments it had made to him during its fiscal year ended January 31, 1988, pursuant to the lease and consulting agreements. Sometime after the recharacterization agreement was entered into, the corporation prepared an amended return for its taxable year ended January 31, 1988, to reflect that agreement; i.e., it did not deduct any amounts paid to Mr. Evans pursuant to the lease and consulting agreements because it treated those payments as nondeductible repayments of borrowed funds. The amended return was submitted to the Bank as part of the corporation's loan application process, but it was never submitted to respondent. Sometime during 1988, the purchasers and the corporation defaulted on their respective obligations under the sales note, the first and second notes, the lease agreement, and the consulting agreement. On or about September 27, 1988, Mr. Evans, *531 through his lawyer, sent the corporation and the purchasers a notice of default with respect to those obligations. In 1988, the corporation commenced a bankruptcy action (bankruptcy proceeding). On May 5, 1989, Mr. Evans filed a proof of claim in that bankruptcy proceeding in respect of a claimed unsecured indebtedness from the corporation to him in the amount of $ 209,906.75. The proof of claim stated that the debt was incurred in February 1987. Mr. Evans recovered $ 12,112 in the bankruptcy proceeding. OPINION Petitioners bear the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Recharacterization of Income
The principal issue in this case is whether petitioners may recharacterize payments received during 1987 and 1988 pursuant to the lease agreement and the consulting agreement. [5] Petitioners do not dispute that those payments were made pursuant to those agreements. Rather, petitioners claim that, on or about March 15, 1988, the parties to those agreements recharacterized the payments made under them as payments by the corporation *532 to Mr. Evans on the debt it owed him pursuant to the first and second notes. Petitioners argue that, therefore, those payments are not income to Mr. Evans for either 1987 or 1988. *533 Petitioners must accept the tax consequences of the payments at issue as they were structured under the various agreements in effect at the time such payments were made to Mr. Evans. See Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974); Foley Mach. Co. v. Commissioner, 91 T.C. 434, 440 (1988); Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1059-1060 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). In deciding those tax consequences, we must determine the actual reason those payments were made, that is to say, the intention of the parties to those payments at the time they were made. See id. This is a question of fact to be decided upon all the facts and circumstances at the time those payments were made. See Egolf v. Commissioner, 87 T.C. 34, 47 (1986); Paula Constr. Co. v. Commissioner, supra at 1059. Because the recharacterization agreement was not entered into until on or about March 15, 1988, the substance of the payments *534 at issue that were made prior to that date cannot be affected or changed retroactively by that agreement. See Foley Mach. Co. v. Commissioner, supra at 440. With the foregoing in mind, we turn to an analysis of the intention of the parties to the payments at issue at the time they were made. 1987 Payments
As admitted by Mr. Evans, the payments to him by the corporation during 1987 were made pursuant to the lease agreement and the consulting agreement. This is what the parties to the agreement intended at the time those payments were made. Consistent with this treatment, in its tax return for its taxable year ended January 31, 1988, the corporation deducted the payments under the lease and consulting agreements as rent and consulting fees, respectively. At no time during 1987 did Mr. Evans, the purchasers, or the corporation intend the payments received by Mr. Evans during that year to be payments on the corporation's debt to him. The substance of the payments at issue during 1987 cannot be changed retroactively by the recharacterization agreement that was entered into after those payments were made. See id.
Consequently, the payments *535 to Mr. Evans during 1987 of $ 12,100 and $ 10,000 pursuant to the lease agreement and the consulting agreement, respectively, constitute ordinary income received by him in that year. We therefore sustain respondent's determination with respect to the payments at issue for 1987. 1988 Payments
Although the record does not establish when during 1988 the payments at issue were made, presumably, some unknown amount of those payments occurred before the recharacterization agreement was entered into and some unknown amount occurred thereafter. Consequently, we shall deal with each of these situations separately. With respect to the 1988 payments at issue that were made before the time the recharacterization agreement was entered into on or about March 15, 1988, petitioners have failed to prove that those payments were made for the purpose of paying the corporation's debt to Mr. Evans. The record establishes that those payments were intended to be payments under the lease and consulting agreements, and not on the corporation's debt to Mr. Evans. As discussed above, the intention of the parties in making payments prior to the date in March 1988 on which the recharacterization agreement *536 was entered into cannot be changed by subsequent agreement. See Foley Mach. Co. v. Commissioner, 91 T.C. at 440. We therefore sustain respondent's determination with respect to the 1988 payments made before the recharacterization agreement was entered into on or about March 15, 1988. With respect to the 1988 payments at issue that were made after the recharacterization agreement was entered into, assuming arguendo that Mr. Evans, the purchasers, and the corporation could have modified their various agreements in such a way so as to alter for Federal tax purposes their intention regarding those payments, we would nonetheless find against petitioners. It is unclear from the record whether the recharacterization agreement pertained both to payments made before and to be made after the date on which that agreement was entered into, or whether that agreement applied only to payments made prior thereto. Although Mr. Evans testified generally that the recharacterization agreement applied to payments received by him during 1987 and 1988, that testimony is inconsistent with the testimony of Mr. Harrell, the accountant who prepared petitioners' returns for *537 the years at issue and the corporation's return for its taxable year ended January 31, 1988. Mr. Harrell specifically testified that, in order to reduce the loss shown by the corporation for its fiscal year ended January 31, 1988, the recharacterization agreement covered payments made under the lease agreement during 1987 and in January 1988. He further testified that the consulting fees were treated under the recharacterization agreement in the same manner as the lease payments. On the instant record, petitioners have failed to prove that, by entering into the recharacterization agreement, Mr. Evans, the purchasers, and the corporation in fact modified their various prior agreements with respect to payments to be made after the date of the recharacterization agreement and intended those payments to be in reduction of the corporation's debt to Mr. Evans, and not payments under the lease and consulting agreements. We therefore sustain respondent's determination with respect to the 1988 payments made to Mr. Evans after the recharacterization agreement was entered into on or before March 15, 1988. Self-Employment Tax
Petitioners presented no evidence and make no argument *538 regarding their liability for self-employment tax for 1987 and 1988. Consequently, petitioners have failed to satisfy their burden of proof on that issue. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Accordingly, we sustain respondent's determination regarding petitioners' liability for self-employment tax for 1987 and 1988. Additions to Tax
Petitioners presented no evidence and make no argument regarding the additions to tax under section 6653(a)(1)(A) and (B) and section 6661(a) for 1987 and under section 6653(a)(1) for 1988. Consequently, petitioners have failed to satisfy their burden of proof on those issues. See Rule 142(a); Niedringhaus v. Commissioner, 99 T.C. 202, 220-222 (1992); Crown Income Charitable Fund v. Commissioner, 98 T.C. 327, 339 (1992), affd. 8 F.3d 571 (7th Cir. 1993). Accordingly, we sustain respondent's determinations that petitioners are liable for 1987 for the additions to tax under section 6653(a)(1)(A) and (B) and section 6661(a) and for 1988 for the addition to tax under section 6653(a)(1). To reflect the foregoing *539 and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although Mr. Evans' testimony may suggest to the contrary, the parties have stipulated that a consulting agreement was entered into by Mr. Evans, the corporation, and the purchasers.↩
3. According to the stipulation of facts agreed to by the parties, Mr. Evans received 12 monthly payments of $ 1,100 totaling $ 12,100. We presume the reference to 12 monthly payments is an error, since otherwise Mr. Evans would have received a total of $ 13,200 during 1987, and not the $ 12,100 to which the parties stipulated.↩
4. The corporation's tax return for its taxable year ended January 31, 1989, is not in evidence.↩
5. Although petitioners did not report any gain from the sale of Mr. Evans' stock in their 1987 and 1988 returns, the parties stipulated that the amount of unreported, taxable gain for 1987 from that sale is $ 28,800. We do not fully understand how the parties arrived at that figure nor why petitioners show in their reply brief a different amount for their 1987 unreported gain. In any event, since the parties stipulated to the amount of unreported, taxable gain for 1987 from the sale of Mr. Evans' stock, payments made for that stock during 1987 are not at issue for that year. Nor are payments made during 1988 for the sale of his stock at issue for that year. In their tax return for 1988, petitioners reported a bad debt loss in the amount of $ 117,150. Respondent has conceded that petitioners are entitled to a bad debt loss in the amount of $ 115,569 for 1988. Petitioners presented no evidence and make no argument about this matter. We therefore assume that they have conceded that they are entitled to a bad debt loss of only $ 115,569. See Rybak v. Commissioner, 91 T.C. 524, 566↩ n.19 (1988).